No. 24-6158

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 13, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| FREE SPEECH COALITION, INCORPORATED, et al.,<br><br>    Plaintiffs-Appellees,<br><br>v.<br><br>JONATHAN THOMAS SKRMETTI,<br><br>    Defendant-Appellant.<br>―――――――――――――――――――――<br>STATE OF OHIO,<br><br>    Amicus Curiae. | O R D E R |

Before: McKEAGUE, GRIFFIN, and NALBANDIAN, Circuit Judges.

Defendant Jonathan Skrmetti, in his official capacity as the Attorney General of Tennessee, appeals the district court's order preliminarily enjoining him from enforcing the Protect Tennessee Minors Act ("PTMA"), which was set to go into effect on January 1, 2025. General Skrmetti moves to stay the preliminary injunction pending appeal. Plaintiffs oppose a stay. Our initial review suggests that the district court's First Amendment analysis was lacking, so we grant the stay.

We first consider one preliminary matter. The State of Ohio moves for leave to file an amicus brief in support of a stay. Federal Rule of Appellate Procedure 27 does not address the

filing of amicus briefs. *See generally* Fed. R. App. P. 27. But we may grant leave to file an amicus brief when "desirable and . . . the matters asserted are relevant to the disposition of the case," so long as the brief complies with the necessary formatting requirements. Fed. R. App. P. 29(a)(3)(B), (4). The brief proffered by the State of Ohio meets the formatting requirements, includes substantive law, and offers insight from a party with interests relevant to the case. No party opposes Ohio's appearance as amicus, *see* Fed. R. App. P. 29(a)(2), and its appearance will not result in a judge's disqualification from the panel, *see id.* The motion will therefore be granted.

Tennessee's law seeks to protect children from the devastating effects of easy access to on-demand pornography. These effects are well-documented; they include social disengagement, increased delinquency, mental health and body-image difficulties (especially for girls), riskier and earlier sexual behaviors and increased transmission of sexually transmitted diseases, increased objectification of women and stereotyping, and greater likelihoods of committing and suffering sexual violence. R. 29-2, Principi Study, PageID 480–82.[1]

This shouldn't be a surprise. One celebrated investigation of a leading pornography site found the site "infested with rape videos" and described how it "monetizes child rapes, revenge pornography, spy cam videos of women showering, racist and misogynist content, and footage of women being asphyxiated in plastic bags." Nicholas Kristof, *The Children of Pornhub*, N.Y. Times (Dec. 4, 2020). And that barely even scratches the surface. Searches for "girls under 18" or "14yo" yielded hundreds of thousands of results. *Id.* This content corrodes healthy childhood development and poisons impressionable minds; pornography sites will show kids "how to have anal sex long before they've had their first kiss." Jonathan Haidt, *The Anxious Generation: How*

---

[1] General Skrmetti cited extensive support in his briefing below regarding the pervasive and extreme nature of internet pornography. Ohio's amicus brief does, too.

*the Great Rewiring of Childhood is Causing an Epidemic of Mental Illness* 105 (2024). Children can't buy cigarettes or alcohol, much less visit a strip club, but in the online Wild West, anything goes for anyone of any age. Children's easy access to hardcore internet pornography, made possible by modern computers and smartphones, is part of what one social psychologist has called "the Great Rewiring of Childhood." *Id.* at 35.

Seeking to stem the flow of this toxic content to minors, Tennessee passed the PTMA in early 2024. The law requires online pornography sites to use age-verification technology. Tenn. Code Ann. § 39-17-912. Several plaintiffs, online pornography companies among them, sued shortly before the law was set to take effect on January 1, 2025. The district court preliminarily enjoined General Skrmetti from enforcing the law. He asks us to stay the preliminary injunction while this appeal is pending.

We consider four factors when determining whether to grant a stay pending appeal: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) the public interest. *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022). In First Amendment cases, however, the likelihood of success is generally the "crucial inquiry," as the other factors "entirely depend" on the constitutionality of the state action. *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir.2007)); *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020).

Generally, our "review of the district court's decision to issue a preliminary injunction is highly deferential," though we will reverse if "the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 731 (6th Cir. 2021) (per curiam) (order) (cleaned

up). But in First Amendment cases, we apply de novo review to the question of whether the movant is likely to succeed on the merits. *See Bays*, 668 F.3d at 819 ("Because the 'determination of whether the movant is likely to succeed on the merits is a question of law and is accordingly reviewed de novo,' the standard of review for a district court decision regarding a preliminary injunction with First Amendment implications is de novo." (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007))).

General Skrmetti argues that he is likely to succeed in showing that the district court erred in holding that the PTMA is facially unconstitutional. Typically, to succeed on a facial challenge, a plaintiff must "establish[] that no set of circumstances exists under which the law would be valid, or . . . show[] that the law lacks a plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up). In the First Amendment context, that standard is relaxed a touch— a plaintiff must show that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (cleaned up). But still, "[t]o justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023). Thus, "a law with a plainly legitimate sweep may be struck down in its entirety . . . only if the law's unconstitutional applications substantially outweigh its constitutional ones." *NetChoice*, 603 U.S. at 723–24 (cleaned up).

Even assuming the district court was correct in applying strict scrutiny, it still did not establish that the unconstitutional applications of the PTMA outweigh the constitutional ones. A facial challenge requires a court to "determine a law's full set of applications, evaluate which are constitutional and which are not, and compare the one to the other." *Id.* at 718. The district court did not do so. It briefly acknowledged that the statute directly targets pornography, but it made no

effort to determine whether the constitutional applications of the law—e.g., requiring pornography websites to verify users' ages—are substantially outweighed by the unconstitutional applications of the law.  In fact, the only potential impermissible applications it cited were Plaintiffs' hypothetical violations of the PTMA—the phrase "the human nipple," the emoticon "(o)(o)," or a cartoon rendering of a breast.  Instead, the district court concluded that the unconstitutional applications of the PTMA must, by definition, outweigh the constitutional ones because the PTMA requires age-verification for any website if one-third of its content is harmful to minors, even if the other two-thirds is not.  As the Supreme Court has long made clear, most recently in *Hansen* and *NetChoice*, a facial-challenge analysis requires more.

Nor do Plaintiffs make any attempt to explain what content that is not harmful to minors—besides their hypotheticals—would be age-restricted under the PTMA.  Instead, they now adopt the district court's reasoning that "the PTMA captures more protected speech than it does unprotected speech by its own terms, as even websites that are mostly comprised of content that is <u>not</u> harmful to minors must pay to verify the ages of their visitors."  But this circular logic does not satisfy Plaintiffs' "burden of demonstrating . . . substantial overbreadth" relative to its plainly legitimate sweep, *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (en banc) (quoting *Virginia v. Hicks*, 539 U.S. 113, 122, (2003)), which requires them to "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally," *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988) (cleaned up).  Given Plaintiffs' failure to carry their burden, and the district court's failure to recognize that, General Skrmetti has shown that the district court likely erred in concluding that the PTMA is facially unconstitutional.

General Skrmetti argues that Tennessee will be irreparably harmed absent a stay of the injunction because it will be unable to enforce a law aimed at addressing public-health problems stemming from minors' access to internet pornography.  Indeed, "[t]he 'inability to enforce its duly enacted [law] clearly inflicts irreparable harm on the State.'" *OPAWL – Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024) (alteration in original) (quoting *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018)).

Next, the balance of the equities.  Quoting the Supreme Court's decision in *Elrod v. Burns*, Plaintiffs argue that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," though they did not note they were citing a three-justice plurality opinion.  427 U.S. 347, 373 (opinion of Brennan, J.); *see also Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893–94 (8th Cir. 2024) ("*Elrod* was a 5 to 3 decision declaring certain patronage employment practices violated the First Amendment.  One Justice did not participate.  Two Justices in the majority declined the joined the plurality's 'wide-ranging opinion.'" (quoting *Elrod*, 427 U.S. at 375 (Stewart, J., concurring in judgment))).  But assuming Plaintiffs are right, their argument depends on the merits, and it's not yet clear that the PTMA threatens any freedom protected by the First Amendment.  So the equities do not clearly weigh in Plaintiffs' favor.

And there are competing public interests at play.  On the one hand, "[i]t's in the public interest to prevent violations of constitutional rights.  But it's equally in the public interest to give 'effect to the will of the people by enforcing the laws they and their representatives enact,' absent a constitutional issue." *OPAWL*, 118 F.4th at 785 (quoting *Thompson v. DeWine*, 959 F.3d 804, 812 (6th Cir. 2020)).

What's more, other circuits (and the Supreme Court) have let similar state laws go into effect. The Fifth Circuit vacated a preliminary injunction and determined that Texas's age-verification law was likely constitutional because under *Ginsberg v. New York*, 390 U.S. 629 (1968), laws regulating speech that is obscene for minors need only satisfy rational-basis review. *Free Speech Coal. v. Paxton*, 95 F.4th 263, 269–70 (5th Cir. 2024), *stay denied* 144 S. Ct. 1473 (mem.), *cert. granted* 144 S. Ct. 2714 (mem.). And when the Supreme Court granted certiorari, it declined to block Texas's law pending appeal. 144 S. Ct. 1473 (mem.); 144 S. Ct. 2714 (mem.). The Seventh Circuit then stayed an injunction against Indiana's age-verification law, letting the law go into effect while the Supreme Court considered the *Paxton* case. *Free Speech Coal. v. Rokita*, No. 24-2174, 2024 WL 3861733 (7th Cir. Aug. 16, 2024). We see no reason to keep Tennessee's law on ice while Texas and Indiana may enforce theirs[2] (against at least one of the

---

[2] The district court found that Tennessee's law was likely "materially different from Texas's law" because the court, relying on the anti-surplusage canon, read Tennessee's law very broadly. R. 38, Order, p.24, PageID 867. For example, the PTMA subjects to regulation "content harmful to minors," defined in relevant part as content that is "sexually explicit and harmful or inappropriate for minors or designed to appeal to or pander to the prurient interest." Tenn. Code Ann. § 39-17-912(b)(5)(A)(i). The district court thought that this definition departed from traditional obscenity concepts because "'sexually explicit material' that is 'harmful or inappropriate for minors' is subject to regulation even if it is not 'designed to appeal to or pander to the prurient interest.'" R. 38, Order, p.25, PageID 868. Rejecting General Skrmetti's argument that this is a distinction without a difference, the court stated: "[T]he rule against surplusage requires the Court to give effect to every word in the statute." *Id.* at p.25–26, PageID 868–69. And it decided that "sexually explicit and harmful or inappropriate for minors" must therefore be something different than the prurient interest standard. We're not so sure. First, the district court did not identify any situation where something that appeals to the prurient interest (classic obscenity, i.e., hardcore pornography) wouldn't also be sexually explicit and harmful for minors, or vice versa. Second, and related, the district court described the anti-surplusage canon too strongly, as a "rule . . . requir[ing] the Court to give effect to every word." *Id.* But it's not quite that. As the Supreme Court has explained, "[t]he canon against surplusage is not an absolute rule." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 385 (2013); *see also King v. Burwell*, 576 U.S. 473, 491 (2015) ("[O]ur preference for avoiding surplusage constructions is not absolute." (cleaned up)). For good or for ill, sometimes legislative "drafters do repeat themselves and do include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Antonin Scalia & Bryan A. Garner, *Reading Law* 176–77 (2012); *see also* Linda D.

same Plaintiffs), especially when the Supreme Court will soon offer guidance on the standard of review we should apply.

On balance, given the low likelihood of success on the merits, a stay is warranted. Accordingly, the motion for a stay of the preliminary injunction is **GRANTED** and the motion of amicus curiae State of Ohio for leave to file an amicus curiae brief is **GRANTED**.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk

---

Jellum, *Mastering Statutory Interpretation* 104 (2008) ("Legal drafters often include redundant language on purpose to cover any unforeseen gaps or simply for no good reason at all."). Judges must thus apply the anti-surplusage canon "with judgment and discretion, and with careful regard to context." Scalia & Garner, *supra*, at 176. This case is still at the preliminary injunction stage, so neither we nor the district court are making final determinations of what the PTMA means. Still, the district court's overly wooden anti-surplusage reading gives us another reason for pause. It seems to us more likely—on a common-sense reading of the language—that the statute's several clauses are a belt-and-suspenders way of covering much or all of the same content, even if superfluously so.